UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>LANA M RUEL,<br><br>                         Debtor<br>WARREN E. AGIN, CHAPTER 7 TRUSTEE,<br><br>                         Plaintiff<br><br>v.<br><br>BARBARA ANN CHAMBERS,<br>ARTHUR TURNER III, and<br>CHERYL L. SMITH, as Trustees of the<br>   Turner Family Irrevocable Trust,<br>and<br>BARBARA ANN CHAMBERS,<br>ARTHUR TURNER III,<br>CHERYL L. SMITH, and<br>ERIC TURNER, individually and<br>   as beneficiaries of the<br>   Turner Family Irrevocable Trust,<br><br>                         Defendants | Chapter 7<br>Case No. 08-18401-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 09-1398 |

MEMORANDUM OF DECISION

      By his complaint in the adversary proceeding, the chapter 7 trustee, Warren Agin ("Agin"), seeks to avoid under 11 U.S.C. § 547(b) and preserve for the estate the transfer by the debtor, Lana Ruel (the "Debtor"), to the Turner Family Irrevocable Trust (the "Trust") of a mortgage on her home to secure payment of a promissory note in the amount of $67,000. The defendants, all of whom are siblings of the Debtor and at all relevant time have been beneficiaries of the trust, are Barbara Ann Chambers, Arthur Turner III, and Cheryl L. Smith, individually and as trustees of the Trust, and Eric Turner individually. The Debtor gave the note and the mortgage to the Trust to assure payment to the Trust of a debt that arose

1

when she, as a trustee of the Trust, misappropriated Trust funds in the amount of $44,841.56, and to compensate the Trust and its beneficiaries, her defendant siblings, for any additional loss they may have incurred because of her actions. Agin has withdrawn all claims against the Trust itself and is now pressing only his preference claim against the defendants in their individual capacities.

The Defendants maintain that the Trustee may not avoid as a preference the Debtor's transfer of an interest in her property for two reasons. First, at the time of the transfer, the Debtor's interest in the property was protected by a Massachusetts homestead exemption vastly exceeding the amount of equity in her property. The equity was and remains sufficient to fully secure the $67,000 promissory note. In view of the fact that the transferred value was fully protected by the homestead exemption, the defendants argue, creditors cannot have been harmed by the transfer, and therefore the transfer should not be subject to avoidance under § 547(b). Second, they argue that the trustee has not satisfied subsection 547(b)(4), which, in this instance, requires a showing that at least one of the creditors to whom or for whose benefit the transfer was made was an "insider." The defendants contend that this requirement is not satisfied because (i) the defendant Trust is not an insider because, despite the family relations among the debtor and all its trustees and beneficiaries, the transfer was obtained at arm's length, in an adversarial context, and (ii) the individual defendants are not creditors of the Debtor because they have no direct claim against her. Lastly, the defendants argue, if the court decides that avoidance of the mortgage is warranted under § 547(b), the appropriate remedy under § 550(a)(1) is simple avoidance of the mortgage, not an award of damages in the amount of the value transferred.

Rather than appear and present evidence in support of their positions at a trial, the parties, at the "trial," stipulated to certain facts and to the introduction of certain exhibits, including an affidavit of defendant Barbara Ann Chambers, and submitted the matter for judgment on the record so established, on a case stated. *See Industrial Commc'ns & Elec., Inc. v. O'Rourke*, 582 F.Supp.2d 103, at

2

104-105 (D. Mass. 2008) and cases cited.   When a matter is submitted in this manner, the court is bound by the stipulated facts but may draw such inferences from the agreed facts as are appropriate.[1]

**FACTS**

    a.  **The Agreed Facts**

The Court begins by reciting the facts as the parties have stipulated to them.  The facts enumerated 1 through 38 were stipulated to in the parties' joint pretrial memorandum . The fact enumerated 39 was agreed to on the record at trial.

1. The Debtor acquired real estate known and numbered as 5 South Street, Brant Rock, Massachusetts from Hazel A. Ruth by a deed dated January 8, 1987 (the "Property").

2. The Property had a fair market value of approximately $425,000 on or about September 19, 2008.

3. The Property is encumbered by a first mortgage to PHH Mortgage Services or its successor(s) by assignment, securing a note in the approximate amount of $190,000.

4. The Property is encumbered by a second mortgage to Fleet Bank, now Bank of America or its successor(s) by assignment, securing a home equity line of credit in the approximate amount of $100,000.

5. The Trust is a Massachusetts nominee trust formed by a Declaration of Trust dated August 14, 2000.

---

[1] *E.E.O.C. v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 603 (1st Cir. 1995) (where, in a nonjury case, the basic dispute between the parties concerns the factual inferences that one might draw from the more basic facts to which the parties have drawn the court's attention, there are no significant disagreements about those basic facts, and neither party has sought to introduce additional factual evidence or asked to present witnesses, the district court is freed from the usual constraints that attend the adjudication of summary judgment motions and may then engage in a certain amount of differential factfinding, including the sifting of inferences). To be clear, the present case is not before the court on cross-motions for summary judgment, but for judgment on a case stated. The constraints of the summary judgment process do not apply.

3

6. The original and current beneficiaries of the Trust are Barbara Ann Chambers, Arthur Turner III, Eric J. Turner, Cheryl L. Smith, and the Debtor (the "Beneficiaries").

7. The original trustees and, with the exception of the Debtor, current trustees of the Trust are Barbara Ann Chambers and Arthur Turner III (the "Trustees").[2]

8. By instrument dated April 4, 2008, the Debtor resigned as a trustee of the Trust.

9. The Beneficiaries and Trustees of the Trust are the Debtor's brothers and sisters.

10. The Debtor had access to the Trust's bank account.

11. Over the approximately two years prior to April 4, 2008, and unbeknownst to the other beneficiaries and trustees of the Trust, the Debtor stole approximately $44,841.56 from the Trust's bank account.

12. The Debtor testified at her 341 meeting of creditors on December 8, 2008, that this was "money that I borrowed [from the Trust] that I couldn't pay back."

13. On or about April 4, 2008, the Debtor executed a promissory note of even date acknowledging that she had received money from the Trust and agreeing to repay $67,000 to the Trust (the "Note").

14. According to the Debtor, the Note was executed in an amount more than what the Debtor had taken from the Trust bank account because the Debtor wanted to offer the Trust some more for anything extra they may have incurred.

15. On April 4, 2008, the Debtor granted the Trust a mortgage on the Property to secure her obligations under the Note (the "Mortgage"; the Debtor's grant of the Mortgage is the "Transfer").

---

[2] I understand this stipulation to mean that the Debtor was one of the original trustees of the Trust but was removed from or resigned that position at some point after the discovery of her misappropriations and no longer is a trustee.

4

16. Because of the Transfer, the Note and Mortgage became assets of the Trust of which the Beneficiaries are entitled to pursuant to the Trust creation instrument.

17. On October 31, 2008, the Debtor filed the above-captioned bankruptcy case.

18. The only real property the Debtor owned at the time she filed her bankruptcy petition was the Property.

19. The only real property the Debtor owned at the time of the Transfer was the Property.

20. The Property was worth approximately $425,000 at the time of the Transfer.

21. The Debtor had personal property worth approximately $16,764.48 at the time she filed her bankruptcy petition.

22. The Debtor did not sell or transfer any vehicles in the two years prior to filing her bankruptcy petition.

23. The Debtor did not transfer any assets worth more than $5,000 to anyone in the four years prior to her bankruptcy filing.

24. The real and personal property as scheduled by the Debtor on her bankruptcy schedules at the time she filed her bankruptcy petition was the same or substantially similar at the time of the Transfer.

25. The Debtor claimed the entire amount of the equity in the Property as exempt on her bankruptcy schedules.

26. The Debtor claimed $12,626.40 of her personal property as exempt on her bankruptcy schedules, leaving non-exempt personal property totaling $4,138.08.

27. The Debtor's total secured debts at the time of her bankruptcy filing were approximately $342,667.

28. The Debtor's total unsecured debts at the time of her bankruptcy filing were approximately $100,853.02.

29. The Debtor's total secured and unsecured debts as scheduled on her bankruptcy schedules at the time she filed her bankruptcy petition were the same or substantially similar at the time of the Transfer.

30. The Debtor's assets and liabilities as scheduled on her bankruptcy schedules at the time she filed her bankruptcy petition were the same or substantially similar at the time of the Transfer.

31. The defendant Beneficiaries have a claim against the Debtor for, inter alia, the Debtor's breach of her fiduciary duty to them by stealing money from the Trust bank account.

32. The Transfer was made to the Trust.

33. The Transfer was made for or on account of an antecedent debt owed by the Debtor before the Transfer was made.

34. The Debtor was insolvent at the time of the Transfer.

35. The Transfer was made between 90 days and 1 year before the date the Debtor filed her bankruptcy petition.

36. The Transfer enabled the defendant Beneficiaries to receive more than they would have if the case were a case under chapter 7 of Title 11 of the United States Code, the Transfer had not been made, and the defendant Beneficiaries received payment of such debt to the extent provided by the provision of Title 11.

37. The Trustee is a hypothetical lien creditor.

38. The Mortgage is avoidable because it is unperfected.[3]

39. The Debtor recorded a declaration of homestead under Massachusetts G.L. c. 188 as to the Property before she granted the Trust the Mortgage.  (The date on which she recorded the homestead declaration is not in evidence.)

---

[3] The purpose and meaning of this stipulation is unclear.  The Plaintiff does not rely on it to avoid the Mortgage. By avoidance of a mortgage under § 547, a trustee avoids not only the perfection of the mortgage but also the granting of it—the mortgage becomes a nullity—so there remains nothing left to avoid.

### b. Further Findings of Facts

When a matter is submitted on a case stated, the court, though bound by the stipulated facts, may draw such inferences from those facts as are appropriate. By inference from the stipulated facts, I make the following further findings:

1. The Transfer was made for the benefit of the defendant beneficiaries. As beneficiaries of the Trust, their beneficial interests in the Trust were, and were intended to be, enhanced by the Transfer.

2. The Transfer was arranged, to a greater extent than family transactions often are, at arms' length, after the Debtor had, by her own precipitating conduct and her family's reaction thereto, been placed in an adversarial relationship to her siblings. Despite this adversarial relationship, however, the transaction did not wholly lose its intrafamilial character. The Debtor herself remained a beneficiary of the Trust. The defendants structured the note and mortgage to permit the Debtor to pay her obligation to her siblings only when she sold her house, the timing of which she would control. And the transaction favored the defendants over the Debtor's other creditors, whom she could not afford to pay in full, by giving them a security interest that others did not receive.

3. The Mortgage has not been foreclosed, and neither the Trust nor the defendant beneficiaries have received payment of any amount due under the promissory note that the Mortgage secures.

**DISCUSSION**

I begin by identifying what is established and what remains at issue. In order to avoid a transfer as preferential under § 547(b), a trustee in bankruptcy must show the following:

1) that the transfer in question was of "an interest of the debtor in property," 11 U.S.C. § 547(b);

2) that the transfer was made "to or for the benefit of a creditor," § 547(b)(1);

3) that the transfer was made "for or on account of an antecedent debt owed by the debtor before such transfer was made," § 547(b)(2);

4) that the transfer was made "while the debtor was insolvent," § 547(b)(3);

5) that the transfer was made "(A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider," § 547(b)(4); and

6) that the transfer "enable[d] such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of [Title 11 of the United States Code]; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of [Title 11]," § 547(b)(5).

By the stipulations of fact, Agin has established and the defendant beneficiaries have conceded four of these elements—the second, third, fourth, and sixth. With respect to the second and third, however, the parties disagree as to precisely how these elements are satisfied. The focus of the dispute is the requirement in § 547(b)(1) that the transfer have been made "to or for the benefit of a creditor." Agin maintains, and the defendants concede, that the transfer was made to the Trust and that the Trust was a creditor of the Debtor. Agin further maintains that defendant beneficiaries were themselves creditors of the Debtor—by virtue of their claim as beneficiaries against her as trustee for breach of her fiduciary duty to them by misappropriation of trust assets—and therefore that the transfer further satisfied § 547(b)(1) because it was for the benefit of the defendants. I understand the defendants to concede that

the transfer was made for their benefit,[4] but they deny that they were creditors of the Debtor at the time. They contend that they had no direct claim against the Debtor for her malfeasance; they had only their beneficial interests in the Trust, which itself had a claim against the Debtor. This dispute affects the manner in which § 547(b)(2) is satisfied: is the debt to the Trust the only antecedent debt that satisfies the subsection (b)(2), or is it also satisfied by debts to the defendant beneficiaries?

More importantly, it affects the first of two issues remaining in dispute: whether § 547(b)(4) is satisfied. Where, as here, the transfer in question occurred "between ninety days and one year before the date of the filing of the petition," the transfer may be avoided only "if such creditor at the time of such transfer was an insider." 11 U.S.C. § 547(b)(4). The words "such creditor" in subsection 547(b)(4) refer back to subsection (b)(1), where "creditor" is any creditor to or for whose benefit the transfer was made. Agin maintains that the Trust itself, to which the transfer was made, was an insider because its trustees and beneficiaries were all relatives of the Debtor, and relatives of a debtor are statutorily defined to be insiders. See 11 U.S.C. § 101(31)(A)(i) ("The term 'insider' includes—if the debtor is an individual—relative of the debtor."). However, at trial, Agin indicated that he would not rely on or attempt to establish that the Trust is an insider. Rather, to satisfy the insider requirement, Agin is proceeding solely on the theory that the Transfer was made for the benefit of the defendant beneficiaries, that they were creditors of the Debtor, and that, by the definition in 11 U.S.C. § 101(31)(A)(i), they were insiders. For the reasons articulated in the previous paragraph, the defendants take the position that although the defendants were insiders, they were not creditors, and therefore that subsection 547(b)(4) is not satisfied. The Court must therefore determine whether the defendant beneficiaries were creditors.

The other remaining issue is whether the transfer in question was of "an interest of the debtor in property." The defendants do not dispute that the Debtor's granting of a mortgage was a transfer of

---

[4] If I misconstrue their position, I nonetheless have found, by inference from the stipulated facts, that the transfer was made for the benefit of the defendant beneficiaries.

9

an interest of the Debtor in property. Rather, they contend that in view of the fact that her interest in the mortgaged property was fully protected by her Massachusetts homestead exemption, it should not, *for purposes of § 547(b)*, be treated as an interest of the debtor in property. Rather, by virtue of the homestead exemption, it was property that (i) in a bankruptcy case would *not* have been available for distribution to creditors and (ii) after a bankruptcy filing she would have been free to transfer as she pleased. In short: no harm, no foul. Agin replies that the literal language of the statute permits avoidance of any transfer of an interest of the debtor in property, without exception for those protected by an exemption, and that the weight of authority on this issue favors avoidance.

### a. Were the Defendants Creditors?

The first issue is whether the defendant beneficiaries were creditors of the Debtor. The defendants do not deny that the Debtor incurred liability on account of her malfeasance, but they contend that the only party to whom she was liable was the Trust, and that the defendants themselves had no direct claim against the Debtor. The Court rejects this position and holds that the defendants, as beneficiaries, each held a direct claim against the debtor for her breach of fiduciary duty to them by appropriating Trust assets as her own. This is a well-settled point of law.[5] The defendants in fact even concede the point as one of their stipulated facts. See stipulated facts, ¶31 ("The defendant Beneficiaries have a claim against the Debtor for, inter alia, the Debtor's breach of her fiduciary duty to them by stealing money from the Trust bank account.").

---

[5] See, generally, *Ball v. Ball*, 268 Mass. 260 (1929). See also Restatement (Second) of Trusts § 205 cmt. a (1959) ("If the trustee commits a breach of trust, the beneficiary may have the option of pursuing a remedy which will put him in the position in which he was before the trustee committed the breach of trust; or of pursuing a remedy which will give him any profit which the trustee has made by committing the breach of trust; or of pursuing a remedy which will put him in the position in which he would have been if the trustee had not committed the breach of trust.") and Restatement (Second) of Trusts § 214 (1959) ("If there are several beneficiaries of a trust, any beneficiary can maintain a suit against the trustee to enforce the duties of the trustee to him or to enjoin or obtain redress for a breach of the trustee's duties to him.").

"Creditor," a defined term, means (in relevant part) "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."[6] 11 U.S.C. § 101(10)(A). "Claim," in turn, is defined very broadly to include any right to payment, even one arising from a right to an equitable remedy, whether such right to payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5). By this broad definition, the beneficiaries' rights against the Debtor were a claim, and the beneficiaries were therefore creditors of the Debtor. It follows that subsection 547(b)(4) is satisfied.

**b.   No Harm, No Foul?**

Does the fact that the transferred interest of the Debtor in property was exempt from creditor process somehow insulate the transfer from avoidance under § 547(b)? This issue has been addressed at length by other courts. As Agin argues and the Court is persuaded, the weight and clear direction of authority on this issue favor rejection of the "ho harm, no foul" defense. The starting point for this conclusion is the language of § 547(b) itself, which asks simply whether there was a transfer "of an interest of the debtor in property." It does not ask whether the property would have become property of the estate; and it makes no exception for property that was exempt under nonbankruptcy law at the time of the transfer. Section 547 does list a number of affirmative defenses in subsection 547(c), but not one for exempt assets. Therefore, the defense now being urged upon the Court would amount to a policy-based departure from the plain meaning of the statute. Nor is that plain meaning plainly absurd or irrational; a creditor can hardly plead that an asset was exempt where the debtor herself did not treat the property as exempt but used it to pay a creditor, in effect waiving any claim of exemption as to the asset. *In re Noblit*, 72 F.3d 757 (9th Cir. 1995). For this reason and those more fully articulated in *Noblit*

---

[6] It is undisputed that the defendant beneficiaries' rights against the Debtor arose before the entry of the order for relief, which in this voluntary case occurred upon the Debtor's filing of her bankruptcy petition. 11 U.S.C. § 301(b).

11

and in the article Agin cites,[7] I hold that the exemptible nature of the transferred property is not cause to bar the avoidance of that transfer under § 547(b). Agin has therefore satisfied each of the six requirements enumerated above for avoidance of a transfer as preferential.

### c. Remedy

Where a trustee succeeds in avoiding a transfer under § 547, "the trustee may recover, for the benefit of the estate, the property transferred or, if the court so order, the value of such property[.]" 11 U.S.C. § 550(a). Agin asks either for an award of the value of the mortgaged property or, in the alternative, for avoidance of the mortgage. The defendants urge the court to limit Agin's remedy to recovery of the property by simple avoidance of the mortgage. They contend that the defendants have not, through the mortgage, extracted any value from the Property or otherwise received payment for the Debtor's malfeasance, and that a monetary judgment would in effect force them to pay a second time for their sister's malfeasance. The Court agrees that in the circumstances, an award of the value of the property would work an injustice, where they themselves have not yet extracted any value from the mortgaged property. The estate is made whole by avoidance of the mortgage, especially where, under 11 U.S.C. § 551, the position of the avoided mortgage is preserved for the estate. The remedy will accordingly be limited to avoidance of the mortgage.

---

[7] Dana Yankowitz, *"I Could Have Exempted It Anyway": Can A Trustee Avoid A Debtor's Prepetition Transfer Of Exemptible Property?*, 3 Emory Bankr. Dev. J. 217 (2006).

**CONCLUSION**

      Having concluded that the granting of the mortgage was a transfer of an interest of the debtor in property to and for the benefit of insiders, judgment will enter avoiding the mortgage.

Date: October 12, 2011

                                              _____
                                              Frank J. Bailey
                                              United States Bankruptcy Judge